IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA        )
                                )
v.                              )        CASE NO. 1:23-CR-355-LSC-KFP
                                )
RANDALL DEMETRIUS BROADEN       )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is Defendant Randall Demetrius Broaden's Motion to Suppress. Doc. 28. The Government opposes the motion. Doc. 33. The Court held a hearing on the motion on February 15, 2024. Upon consideration of the testimony presented at the hearing, the evidentiary submissions, and the parties' arguments, the undersigned recommends Broaden's motion be DENIED for the reasons below.

## I.    FACTUAL BACKGROUND

On March 1, 2023, Jessica Mayhand[1] went to the Enterprise Police Department with her husband and alleged she had been held against her will and assaulted by Broaden from February 27, 2023, until her escape from him. Gov't Ex. 1 (Doc. 36-3 at 1). Following her interview, an arrest warrant was issued for Broaden along with a search warrant for his home and vehicle.

---

[1] Ms. Mayhand is also referred to as Jessica Lawrence. Tr. 8:22–23. The Court refers to her as Mayhand, which is how she is identified in the search warrant affidavit.

###### A.      Mayhand Interview

While she was at the police department, Detective Amber Darbro interviewed Mayhand about her allegations. Tr. 11:19–12:6.[2] Mayhand reported that she had been held by Broaden against her will and that Broaden had repeatedly threatened and beaten her. Specifically, Mayhand said she had been held and harmed by Broaden at his home, 107 Forehand Street, Enterprise, Alabama, and also while in his vehicle, both while traveling and while the vehicle was stationary at the home. Tr. 8:15–12:6. She informed Detective Darbro that Broaden kept the items he used as weapons to threaten her at the residence (e.g., aluminum bat and firearm) and in his vehicle (e.g., wooden bat). Gov't Ex. 1 (Doc. 36-3 at 1). According to Mayhand, Broaden used an aluminum bat to assault her, a small wooden bat to strangle her unconscious, and a firearm to threaten and hit her. Mayhand alleged that Broaden requested her tax income money "for his drugs." Tr. 9:5–6, 24:15–25:3; Gov't Ex. 1 (Doc. 36-3 at 1).

The day before making her report to police, Mayhand tried to get help to escape Broaden while in a Walmart. He had directed her to go into Walmart and purchase some kind of preloaded card that could be used to purchase a cellphone for him. Tr. 9:7–11. While in the store, Mayhand tried to call her husband. Broaden intercepted her attempted call for help and took her back to his vehicle and drove back to his residence. Tr. 9:11–22. At the residence (107 Forehand Street) and while still in the vehicle (a Durango), he

---

[2] The page number citations refer to the court reporter's page numbers on the transcript, not to the CM/ECF page numbers applied after the transcript was filed with the Clerk of the Court.

climbed on top of Mayhand and pushed a wooden bat against her throat to strangle her until she lost consciousness. Tr. 9:18–11:6.

Later, Broaden left in the vehicle with Mayhand. While at an intersection, Mayhand opened the car door and attempted to escape. Tr. 11:7–11. Broaden caught and hung onto her while she was dragged partially outside the vehicle for some distance as he continued to drive. After a short distance, Broaden released Mayhand and took off in the vehicle. Tr. 11:11–14. Enterprise Police were contacted, but Mayhand did not, at that time, "admit to any domestic between them, but when her husband picked her up, he brought her to the Enterprise Police Department and filed a report." Tr. 11:15–21.

### B.     Arrest Warrant and Search Warrant

Based on the Mayhand interview, Detective Darbro talked with the district attorney's office about the case. Tr. 12:7–10. She then prepared an arrest warrant for Broaden on charges for kidnapping (second), domestic assault (second), domestic strangulation, domestic criminal mischief, unlawful imprisonment, and reckless endangerment. Tr. 12:10–16. She also prepared a search warrant for the location Mayhand identified as Broaden's home, 107 Forehand Street, which Mayhand had identified as the place where she was held and assaulted. Tr. 18:4–9. The warrant also included Broaden's vehicle at the property, which was the other location wherein Mayhand alleged some of the offenses had occurred. 19:23–20:3. Detective Darbro's affidavit in support of the search warrant set forth the information Mayhand related about her captivity and abuse during her interview with Detective Darbro, and it also set out Broaden's criminal conviction history. Gov't Ex. 1 (Doc. 36-3 at 1). His criminal history, which was already known to Detective

Darbro, includes convictions of five counts of possession of controlled substance, two counts of distribution of a controlled substance, third degree domestic violence (assault), and two possession of marijuana charges. Tr. 20:4–21:2; Gov't Ex. 1 (Doc. 36-3 at 1). Detective Darbro's affidavit noted that Broaden's felonious criminal history precluded him from possessing a firearm. Gov't Ex. 1 (Doc. 36-3 at 1).

Detective Darbro used a template to complete the search warrant package. Tr. 19:12–16. The form search warrant document and her affidavit included this incomplete sentence: "Therefore, I have probable cause to believe and do believe that a search of 107 Forehand Street Enterprise, Alabama, the out buildings, curtilage, vehicles and persons on the property." Gov't Ex. 1 (Doc. 36-3 at 1). Both the warrant and her affidavit also included the following:

> The search will be for narcotics, United States currency, precious metals, jewelry, electronic surveillance devices, weapons, stolen property, firearms, ammunition, items associated with the use, sale, and distribution of narcotics, indicia of occupancy to include but not limited to envelops and utility bills, any and all other material evidence of violations of the Alabama Drug Crimes Amendments Act of 1987. The requested evidence is relevant, material and necessary to conduct a proper investigation.

Gov't Exs. 1 and 2 (Doc. 36-3 at 1–3). The search warrant additionally stated that "the requested evidence is relevant, material and necessary to conduct a proper robbery investigation." Gov't Ex. 2 (Doc. 36-3 at 3) (emphasis added). Detective Darbro testified that this was an error, "an overlook on [her] part." Tr. 21:19–22:6. The "robbery investigation" language was part of the template document she used to type up the warrant. *Id*. Detective Darbro reiterated that the search warrant was for her investigation into domestic kidnapping and assault. Tr. 22:7–9. Detective Darbro acknowledged that

Mayhand did not allege Broaden was selling drugs but that Mayhand had alleged that Broaden wanted her tax money for drugs, and Detective Darbro was familiar with his criminal history, including drug crimes. Tr. 45:16–18. Detective Darbro also acknowledged that any investigation into the domestic violence and kidnapping was not related to U.S. currency, precious metals, or electronic surveillance devices. Tr. 38:4–23. These items were part of the template she used, which also includes "the Alabama Drug Crimes Amendments Act of 1987." Tr. 44:23–45:8.

Detective Darbro participated in the property search. Tr. 13:1–8, 42:9–43:1. During the search, law enforcement seized firearms, ammunition, and drug paraphernalia, among other things. Def's Ex. 3 (Doc. 36-5 at 5); Tr. 13:11–22, 43:17–23. In the instant case, Broaden is charged in an indictment with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) for knowingly possessing a Hi-Point C9 9mm pistol and ammunition. Doc. 1.

### C.   Execution of the Search Warrant

After completing the search warrant documents, Detective Darbro began contacting judges to determine who was available to sign the warrant, per her usual practice. Tr. 12:16–23, 14:17–15:6. She typically would first contact 12th Judicial Circuit Court Judge Sonny Reagan. Tr. 14:17–15:2. Although she does not have a specific memory whom she attempted to contact first, when none of the judges she initially contacted were available,[3]

---

[3] She learned that the circuit court judges were in Troy in Pike County at a docket. Tr. 31:21–32:13, 35:9–19. Troy is about 45 minutes away from Enterprise, where Detective Darbro was located. Tr. 32:4–10. She has never before driven from Enterprise to get a search warrant. Tr. 32:4–13, 35:12–36:9.

she contacted Paul Sherling and met him with the warrant package on March 2, 2023. Tr. 15:3–6. Sherling, Detective Darbro says, is her last resort for issuing a warrant. Tr. 15:8–16; 16:14–19. She knows him as the "step-in" judge and as the municipal court judge. Tr. 12:15–23, 15:11–16:3, 35:12–23. Sherling has previously signed warrants for her and usually, when Judge Reagan is not available, he tells her whom she should potentially contact. Tr. 14:17–16:3. No circuit court judge has ever instructed Detective Darbro not to contact Sherling for a warrant. Tr. 16:4–6. When she contacted Sherling, he instructed her to meet him at municipal court with the search warrant application. She did, and he reviewed it and signed it. Tr. 16:20–18:19.

### D.    Appointing Authority

On October 5, 2022, Judge Jeff W. Kelley, the Presiding Circuit Judge for the 12th Judicial Circuit of Coffee County and Pike County, Alabama, entered an Appointment of Special Judge § 12-1-14.1. Doc. 28-1. The appointment order stated: "After consultation with the Judges of the 12th Judicial Circuit, it has been determined that an appointment and commission of a special Circuit and District Judge be available while the active Judges attend the Judicial Conference." *Id*.

Judge Kelley ordered B. Paul Sherling appointed as a special circuit judge for the 12th Judicial Circuit and district judge for Coffee County. Judge Kelley also appointed three other lawyers, one more for Coffee and two for Pike County. His order set out that

"[t]he appoint[ment] of 'temporary service' as a special Judge is for no more than one hundred eighty (180) consecutive days." *Id*.

When Sherling signed the search warrant on March 2, 2023, Detective Darbro had no knowledge of his special appointment or its terms. She understood that he was acting under authority granted to him as a "stand-in" judge for the circuit but was unaware of how he was granted that authority. Tr. 33:2–7, 34:10–13.

## II.    DISCUSSION

Broaden moves to suppress, specifically, the 9mm pistol seized during execution of the search warrant, along with all other items obtained during the search. Doc. 28 at 6. He challenges the warrant on two grounds: (1) that it was signed by an individual not authorized to execute search warrants and (2) that the search warrant was a general warrant, overly broad in violation of the Fourth Amendment. Broaden argues the good-faith exception does not apply. The Government argues that the warrant signatory was qualified for the task because he was neutral and detached. Doc. 33. The Government fails to address head-on Broaden's argument that the warrant is overly broad, but it argues that oversights leaving errors in the search warrant do not render it facially deficient. Even if the warrant were facially deficient, the Government argues the good-faith exception to the exclusionary rule applies.

### A.    Applicable Legal Principles

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Searches and seizures violate the

7

Constitution when a supporting warrant does not meet these requirements or fall within an exception.

The exclusionary rule—suppressing evidence obtained in violation of the Fourth Amendment—is not itself a constitutional guarantee. The rule is one of deterrence, not reparation. *See e.g.*, *United States v. Calandra*, 414 U.S. 338, 347–48 (1974) ("The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures[.] The rule is calculated to prevent, not to repair.") (quotation and citation omitted). There are several exceptions to the exclusionary rule, including the good-faith exception. *United States v. Leon*, 468 U.S. 897 (1984).

> The Supreme Court's decision in *Leon* "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." [*United States v.*] *Martin*, 297 F.3d [1308, 1313 (11th Cir. 2002)]. Under this good faith exception to the exclusionary rule, suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. (quotation and citation omitted).

*United States v. Delgado*, 981 F.3d 889, 899 (11th Cir. 2020). Thus, even if a court ultimately determines that a warrant falls short of the constitutional requirements, evidence will not be suppressed if a law enforcement officer relies in objective good faith on a warrant issued by a detached and neutral magistrate. *Leon*, 468 U.S. at 921–22. The exclusionary rule is not warranted in such instances because suppressing evidence would serve no deterrent effect: "Judges . . . are not adjuncts to the law enforcement team; as

neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them." *Id*. at 917.

The good-faith exception applies in all but four instances: "(1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role . . . ; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (quoting *Leon*, 468 U.S. at 922) (internal quotations omitted).

## B.    Sherling's Authority

To suppress the evidence and avoid the good-faith exception, Broaden argues that Sherling wholly abandoned his role in issuing the warrant. Sherling was not an elected Circuit Court Judge in Pike County when he signed the search warrant package on March 2, 2023. The appointment of Sherling for temporary service as a special judge was made on October 5, 2022 "for no more than one hundred and eighty (180) consecutive days"— thus not expiring by that term until April 3, 2023. The appointment was for "a special Circuit and District Judge [to] be available while the active Judges attend the Judicial Conference." No evidence was presented that a judicial conference was ongoing at the time

of Sherling's execution of the search warrant. Broaden argues, therefore, Sherling had no authority and the warrant was void. Tr. 55.

The Government argues that while the Initial appointment may have been for Sherling to step-in specially as a circuit or district judge only while the acting judges were away for conference, the subsequent practice of the judges within the circuit extended his authority beyond the conference limitation and within the 180-day intent of the appointment. Tr. 57–59. As noted, Detective Darbro was not aware of Sherling's authority under the appointing order or its terms. She knew Sherling had stepped in as a special judge previously, she had previously been directed to him in the absence of the circuit court judges, and she operated on the understanding that he was still authorized to do so because the circuit judges were not available in Enterprise.

A presiding circuit judge has authority to appoint a special circuit court judge for "temporary service" of 180 consecutive days. Ala. Code § 12-1-14.1(b) (1975). *Dean v. Bedsole*, No. 2:19-CV-1567-MHH-SGC, 2020 WL 6051339, at *4 (N.D. Ala. Aug. 24, 2020), *report and recommendation adopted*, No. 2:19-CV-1567-MHH-SGC, 2020 WL 6047813 (N.D. Ala. Oct. 13, 2020). And, warrants can be properly executed by a variety of actors, including, in some jurisdictions, clerks and nonlawyers. *See, e.g.*, *Files v. Duerr*, No. 3:20-CV-387-MHT, 2020 WL 6435788, at *5 (M.D. Ala. July 13, 2020), *report and recommendation adopted*, No. 3:20-CV-387-MHT, 2020 WL 6395453 (M.D. Ala. Nov. 2, 2020) (stating "[t]he law is well established that state court clerk office employees can and do regularly issue warrants. Under Alabama law, state court circuit clerks have the authority to 'sign and issue all summons, subpoenas, writs, executions, and other processes, under

the authority of the court.' § 12-17-94(a)(1), Code of Alabama 1975, as amended.")
(quoting *McAdams v. King*, No. 1:17-CV-21-LSC-JEO, 2017 WL 4810622, at *1 (N.D.
Ala. Oct. 25, 2017) and citing *Shadwick v. City of Tampa*, 407 U.S. 345, 348–49 (1972)
(acknowledging "it has never been held that only a lawyer or judge could grant a warrant,
regardless of the court system . . . . The Court frequently has employed the term 'magistrate'
to denote those who may issue warrants . . . . Historically, a magistrate [in this context] has
been defined broadly as 'a public civil officer, possessing such power . . . as the government
appointing him [or her] may ordain.'" (citations omitted))).

### 1. Neutral and Detached

While authority to execute a search warrant may be granted, depending on the
venue, to people holding various positions, a threshold requirement remains. "A search
warrant must be reviewed by a 'neutral and detached magistrate' before it can be executed."
*Martin*, 297 F.3d at 1316 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 450, 91 S.Ct.
2022, 29 L.Ed.2d 564 (1971), *overruled in part on other grounds in Horton v. California*,
496 U.S. 128 (1990)). "[W]hatever else neutrality and detachment might entail, it is clear
that they require severance and disengagement from activities of law enforcement."
*Shadwick*, 407 U.S. at 350. Here, there is no allegation or evidence that Sherling was not
detached. Additionally, there is no allegation or evidence that Sherling was not neutral. Tr.
62. Broaden argues, instead, that the case falls outside *Leon's* reach because Sherling
wholly abandoned his authority.

### 2.      Wholly Abandoned Judicial Role

The scope of *Leon's* exclusion from the good-faith exception for instances where the issuant has "wholly abandoned his judicial role" is not well defined. It is clear that when a judge becomes part of the law enforcement search, he has abandoned his judicial role to the degree *Leon* excludes from good-faith protection. *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–27 (1979) (town justice who issued the warrant accompanied officers on the raid and "was not acting as a judicial officer but as an adjunct law enforcement officer" failing to manifest neutrality and detachment). This case involves no allegation that Sherling participated in the search or engaged in any manner adjunct to law enforcement. *See* Tr. 21:3–16. Broaden's argument regarding Sherling's abandonment is based on the allegation that Sherling was not authorized to act as a special judge under the order of appointment because there was no judicial conference requiring the absence of the circuit judges at the time the warrant was executed and that such an absence was the only time Sherling could step into the special circuit judge appointment. The Court finds Broaden's argument akin to an argument that a judge has acted without jurisdiction.

In *United States v. Taylor*, the Eleventh Circuit found that, although a network investigative technique (NIT) warrant issued outside of the magistrate judge's authority was void *ab initio*, that Fourth Amendment violation did not mean the exclusionary rule required suppression of the evidence; the good-faith exception to the rule could still be applied. 935 F.3d 1279, 1288–89 (11th Cir. 2019) (as corrected Sept. 4, 2019). The court noted that "[28 U.S.C.] § 636(a) is the sole source of a magistrate judge's warrant authority, [and] a warrant issued in defiance of its jurisdictional limitations is void—no warrant at

all." *Id*. at 1287 (quotation omitted). "The dual pillars of the exclusion decision . . . are deterrence and culpability: Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield meaningfu[l] deterrence, and culpable enough to be worth the price paid by the justice system." *Id*. (citing *Davis v. United States*, 564 U.S. 229, 240 (2011) (quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (internal quotations omitted). In consideration of this balance, the Court held:

> The exclusionary rule is concerned with deterring *officer* misconduct and punishing *officer* culpability—not with setting judges straight. *See Herring*, 555 U.S. at 142, 129 S.Ct. 695 (observing that the "exclusionary rule was crafted to curb police rather than judicial misconduct"). Viewed from an officer's perspective, relying on a facially valid warrant that, as it turns out, was void from the beginning is no different from relying on a facially valid warrant that, for instance, was later deemed improper based on a dubious determination of probable cause, *see Leon*, 468 U.S. at 925–26, 104 S.Ct. 3405, or appeared outstanding thanks only to a database error, *see Herring*, 555 U.S. at 136–37, 129 S.Ct. 695. So long as an officer could reasonably have thought that the warrant was valid, the specific nature of the warrant's invalidity is immaterial.

*Taylor*, 935 F.3d at 1290 (emphasis in original).

The Court need not wade into the question of Sherling's authority and the intent of the 12th Judicial Circuit presiding judge who made the special appointment of Sherling or that of the practice implemented by the circuit judges under the appointment order. Even if the Court were to conclude that Sherling had no authority under the appointment to issue the warrant on March 2, 2023, thereby rendering it void *ab initio*, the good-faith exception may still allow exception to the exclusionary rule. Therefore, the Court assumes, without

deciding, the warrant was void. As discussed below, the Court concludes the exception applies.

### 3.   Good-Faith Exception

The process Detective Darbro followed, while perhaps flawed in not confirming Sherling's authority, indicates she was acting in good faith. To the extent a mistake was made as to Sherling's authority, it was his mistake and not Darbro's. She followed her usual process. When the circuit court judges were not present in Enterprise, she went to Sherling with warrants. On this occasion, she followed that process, and she had no reason to question the continuation of his authority as she knew it. She also had no reason to question his approval of the warrant upon his review of it. Detective Darbro reasonably relied on Sherling's issuance of the warrant and participated in carrying it out at the search of Broaden's residence and vehicle.

These circumstances are unusual, and perhaps flawed, but they do not present the kind of sufficiently culpable conduct that deterrence would address by excluding evidence from the warrant's execution. A reasonable officer could have concluded the warrant, along with this process, under these circumstances was valid and reasonably relied upon it. *See United States v. Taylor*, 250 F. Supp. 3d 1215, 1237 (N.D. Ala. 2017), *aff'd*, 935 F.3d 1279 (11th Cir. 2019), as corrected (Sept. 4, 2019) ("A magistrate judge's mistaken belief that she had jurisdiction, absent any indicia of reckless conduct by the agents, does not warrant suppression . . . . Exclusion of the evidence seized pursuant to the NIT warrant would serve little deterrent purpose where the mistaken conduct of the magistrate judge, not the officers,

invalidated the warrant."). Thus, Sherling's mistake as to his authority does not mandate suppression of the evidence.

### C.    Particularity and Probable Cause

Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The "duty of a reviewing court is simply to ensure that the [reviewing judge] had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (quotation omitted). "Probable cause is 'not a high bar.'" *Delgado*, 981 F.3d at 898 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "The mere 'probability or substantial chance of criminal activity' is all that is needed." *Id*. (citing *Wesby*, 583 U.S. at 57 (quoting *Gates*, 462 U.S. at 243–44 n.13)). "[T]he affidavit must contain 'sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched.'" *Martin*, 297 F.3d at 1314 (quoting *United States v. Pigrum*, 922 F.2d 249, 253 (5th Cir. 1991)). It "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id*. (citation omitted).

Broaden and the Government seem to be ships crossing in addressing the substance of the warrant. Broaden argues that the warrant was too broad and not sufficiently particular, rendering it an unconstitutional general warrant, and he calls into question Sherling's approval of the warrant because of the "robbery investigation" error; however, he does not specifically challenge the warrant as lacking probable cause. Doc. 28. The

Government focuses its argument on the warrant's erroneous mention of a "robbery investigation," arguing the error does not render the warrant "so facially deficient that the officer cannot reasonably presume its validity." Doc. 33 at 4. Any facial deficiency of the warrant, the Government argues, survives exclusion because of the good-faith exception. As explained below, the Court finds that the warrant was not so facially deficient as to render law enforcement's reliance on it unreasonable, and the good faith exception applies to avoid the exclusionary rule.

### 1.    Robbery Investigation

The warrant here is no model. It includes errors, which Detective Darbro acknowledges. The warrant erroneously references a "robbery investigation," but it otherwise makes reference to the search being necessary to conduct "a proper investigation"; this same reference to "a proper investigation" also appears in the warrant affidavit. The warrant specifically references the "affidavit in support of [the] application for a search warrant having been made before" the executing judge (Sherling). The criminal conduct within the investigation was clear to Detective Darbro, and it was made clear in her supporting affidavit—at the least it was domestic violence, assault, and kidnapping/imprisonment. The affidavit set out the facts of the criminal activity, including that Mayhand was held against her will at the Forehand Street house and in the vehicle. Mayhand was threatened, beaten, and strangled with multiple objects, including a firearm. Thus, Detective Darbro had reason to believe Broaden was in possession of a firearm despite the prohibition against it based on his criminal history, which was also included in her affidavit. Additionally, she had reason to believe illegal drugs were involved based on

her interview with Mayhand. The affidavit included the allegations that Broaden requested Mayhand give Broaden money for his drug use.

The facts in the warrant affidavit set out a clear connection between the alleged criminal activity and Mayhand's residence at 107 Forehand Street and his vehicle where the conduct was alleged to have been perpetrated. The mistaken reference to a robbery investigation, which was a proofreading error allowing an artifact on the form document to remain, was Detective Darbro's. She interviewed Mayhand, she prepared the warrant and the supporting affidavit, and she was part of the execution of the warrant on 107 Forehand. The mistake was plainly not the result of Detective Darbro knowingly or recklessly misleading Sherling to get the warrant, and Broaden does not argue it was. Indeed, she sought an arrest warrant for kidnapping, second, domestic assault, second, domestic strangulation, domestic criminal mischief, unlawful imprisonment, and reckless endangerment—crimes supported by the facts set out in her affidavit.

Based on the affidavit, there was probable cause to believe criminal activity—e.g., kidnapping, assault, use of a firearm by a prohibited person, and drug use—had occurred and that evidence of that criminal activity could be found at the residence and in the vehicle. And, as explained below, assuming the robbery investigation made the warrant lacking in probable cause, the error does not render the warrant so facially deficient that an officer could not reasonably presume its validity; the good faith exception applies. *See Martin*, 297 F.3d at 1315 ("[I]t is clear that the facts contained in the affidavit leave much to be desired. However, despite its deficiencies as to the specific dates and times and exact links to Martin, we find that it was *not entirely unreasonable* for [the officer] to believe that what

he wrote in the affidavit would be sufficient to support a finding of probable cause. The affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid.") (emphasis in original) (citing *United States v. Hodge*, 246 F.3d 301, 309 (3d Cir. 2001) ("At a minimum, the affidavit was not clearly lacking in indicia of probable cause, but presented a close call.")).[4]

### 2.  Listed Items

Similarly, the warrant's reference to particular search items that Detective Darbro mistakenly left on the form document does not necessitate application of the exclusionary rule, as Broaden argues. Certainly, the Fourth Amendment is enshrined in the protection against an all-out rummaging of an individual's home, where he has an expectation of privacy. This was important to the Framers who had seen searches with no limitations. As the Tenth Circuit succinctly noted,

> The Fourth Amendment provides that "no Warrants shall issue" without "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This particularity requirement, as it has come to be known, was most immediately the product of contemporary revulsion against a regime of general warrants that gave British officials carte blanche to search and seize property of American colonists. *Stanford v. Texas*, 379 U.S. 476, 481–82, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). The Framers constitutionalized the requirement to ensure that a "search will be carefully tailored to its justifications" and "will not take on the character of the wide-ranging exploratory searches" English kings once favored. *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987).

---

[4] The Government argued briefly at the hearing that the warrant could be interpreted to establish probable cause for a robbery investigation because the affidavit included facts that "defendant through threats of violence and force, tried to get money from Jessica Mayhand[.]" Tr. 51. But, Detective Darbro acknowledged she did not draft the affidavit intending to conduct a search based on a robbery investigation. As explained, the Court finds the warrant, albeit containing errors, was not so lacking in probable cause that it was unreasonable for an officer to rely on it in good faith.

*United States v. Suggs*, 998 F.3d 1125, 1132 (10th Cir. 2021). But, the warrant here did not include a general or catch-all category. *See*, *e.g.*, *Suggs*, 998 F.3d at 1132–33 (warrant failed to describe with particularity search items where the warrant targeted some particular items, but also included a catch-all phrase authorizing the search and seizure of "[a]ny item identified as being involved in crime"). Instead, the warrant was detailed and particularly named the items included in the search. Detective Darbro, admittedly, failed to remove from the warrant form the inapplicable items that she did not intend to be a part of the search, including that the search would be for "United States currency, precious metals, [and] electronic surveillance devices[.]" Tr. 37–38. The erroneous inclusions, which are artifacts from the form, do not render the warrant an unconstitutional general warrant as Broaden contends. This was not a general search.

Without a doubt, this warrant could have been drafted more carefully. The description of the items to be seized should be limited to the scope of the established probable cause, but these errant inclusions do not render this warrant "a general, exploratory rummaging in a person's belongings." *Coolidge*, 403 U.S. at 467; *see Signature Pharmacy, Inc. v. Wright*, 438 F. App'x 741, 745–46 (11th Cir. 2011) (search warrant authorizing seizure of items, including "documents, records, bills, logs, computer equipment, and so forth, which [are] evidence of a criminal violation of the laws of the State of Florida" in the listed pertinent crimes and/or statutes had sufficient particularity given officer's ability and the nature of the crime). The list of items may have been

erroneous to a degree, but it was not a carte blanche general exploratory authorization as Broaden argues.[5]

The warrant package established probable cause to believe criminal conduct occurred, at the residence and in the vehicle. And, the warrant was not general. It established clear probable cause to search for particular items identified in the warrant, like firearms and ammunition, including the 9mm firearm and ammunition charged here, even though it errantly listed other items like precious metals. It was not so facially deficient that it cannot be presumed to be valid despite these errors. Even if the warrant failed in particularity and was overbroad, as explained below, these errors do not remove the warrant from the cloak of the good-faith exception.

---

[5] A "plastic bag with multi coin assortment," to the extent seized as "United States currency" or "precious metals," is the only item on the return list that appears to fall within the category of items Detective Dabra testified as erroneously included in the search warrant list" *See* Def's Ex. 3. In his motion, Broaden only specifically moved to suppress the 9mm pistol charged in the indictment and moved generally to suppress "all other items obtained in reliance of the search warrant." Doc. 28 at 6. "To the extent Defendant claims the search exceeded the scope of the warrant, his motion lacks sufficient detail. He has failed to identify any specific item seized that was beyond the scope of the warrant." *United States v. Phothisat*, No. 14-CR-213-CB, 2014 WL 4979196, at *4 (S.D. Ala. Oct. 6, 2014) (citing *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1347 (N.D. Ga. 2011) (suppression motion denied, in part, for failure to specifically identify items seized in violation of warrant)). If he had made a specific argument as to particularity of certain items within the scope of the warrant, the appropriate course might be to sever "'the infirm portion of the warrant and suppress[] only the evidence seized under that portion of the warrant.'" *United States v. Nowka*, No. 5:11-CR-00474-VEH, 2012 WL 2862139, at *3 (N.D. Ala. May 14, 2012) (quoting *United States v. Cook*, 657 F.2d 730, 735 (5th Cir. Unit A 1981) ((holding that judge should sever the infirm portion of the search warrant; "Items that were not described with the requisite particularity in the warrant should be suppressed, but suppression of all of the fruits of the search is hardly consistent with the purposes underlying exclusion. Suppression of only the items improperly described prohibits the Government from profiting from its own wrong and removes the court from considering illegally obtained evidence. Moreover, suppression of only those items that were not particularly described serves as an effective deterrent to those in the Government who would be tempted to secure a warrant without the necessary description.").

### D.     Good-Faith Exception Still Applies

The exclusionary rule does not automatically apply to suppress the evidence. Suppression is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Leon*, 468 U.S. at 906 (quoting *Gates*, 462 U.S. at 223). Thus, "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring*, 555 U.S. at 144 (internal quotation and citation omitted) (holding negligent error insufficient to trigger exclusion). The *Herring* Court identified several factors for deciding whether evidence should be excluded: whether the exclusionary rule's application results in deterrence; whether the deterrence benefits outweigh its costs; and whether the law enforcement misconduct was flagrant or deliberate. *United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010) (citing *Herring*, 555 U.S. at 144). In consideration of these factors, the Court stated:

> An error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place. And in fact since *Leon*, we have never applied the rule to exclude evidence obtained in violation of the Fourth Amendment, where the police conduct was no more intentional or culpable than this.

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring*, 555 U.S. at 144.

Detective Darbro's testimony demonstrates that she had reason to believe crimes had been committed and reason to believe that setting out that conduct and the connection to the house and the vehicle properly supported the warrant. *See Martin*, 297 F.3d at 1318–20 (considering evidence of law enforcement officer that was not presented in the initial search warrant application or affidavit and concluding good-faith exception applied). She prepared an arrest warrant after talking with the district attorney based on the same alleged criminal conduct. The search warrant was approved by the person, Sherling, whom she knew as authorized to make the probable-cause call. Her errors in the warrant's description of a "robbery investigation" and in allowing other form artifacts in the search items list to remain do not rise above mere negligence. Thus, even if the warrant violated the particularity requirement with the errant list or lacked probable cause specific to a "robbery investigation," the warrant cannot be said to "be so clearly insufficient that it provided no hint as to why police believed they would find incriminating evidence[,]" and it was not "so 'facially deficient' that the officers could not have reasonably relied upon it." *United States v. McCall*, 84 F.4th 1317, 1325, 1328 (11th Cir. 2023) (holding that good-faith exception applied where errors in probable cause or particularity were not so obvious that a reasonably well-trained officer would question the validity of the warrant). Under the totality of the circumstances, an officer would have reasonably believed the warrant was proper and relied upon the warrant. *See Herring*, 555 U.S. at 145 ("our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances") (internal quotations omitted); *see also United States v. Cotto*, 995 F.3d 786, 796 (10th Cir.

2021) ("[E]ven if the warrant authorizing a search was not supported by probable cause, evidence obtained pursuant to the search need not be suppressed if the officer executing the warrant acted in good-faith reliance on a judge's approval. When the search is of a home, the good-faith exception applies if the affidavit supporting the warrant establishes a 'minimally sufficient nexus between the illegal activity and the place to be searched.'") (quoting *United States v. Campbell*, 603 F.3d 1218, 1231 (10th Cir. 2010)); *Allen*, 625 F.3d at 839–40 (although warrant was not sufficiently particularized as it did not incorporate the attachment with items to be seized, where magistrate judge signed warrant and its supporting affidavit, the package was reviewed by the law enforcement officer's colleagues and the prosecutor prior to issuance, the executing officer had objective reason to believe the warrant was valid; officer's conduct was merely negligent and not sufficiently culpable and less likely to be deterred by application of exclusionary rule). Detective Darbro's errors resulting from a failure to adequately proofread do not reflect the kind of deliberate and culpable conduct that would remove the warrant from the reach of the good faith exception. *See Herring*, 555 U.S. at 147 ("[W]hen police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not" outweigh any harm to the justice system). Consequently, the negligent mistakes here do not support application of "the extreme sanction of exclusion." *Herring*, 555 U.S. at 140 (quotation omitted). The good-faith exception applies.

### III.   CONCLUSION

Accordingly, for the reasons set forth above, the Magistrate Judge RECOMMENDS that Broaden's Motion to Suppress (Doc. 28) be DENIED.

It is further ORDERED that by **March 28, 2024**, the parties may file written objections to this Recommendation.[6] However, if the trial of this matter is continued from its current setting of April 1, 2024, it is ORDERED that the parties may file written objections by **April 1, 2024.**

An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered. The Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by

---

[6] Because this case is set for trial on April 1, 2024, the Court finds that exigent circumstances exist and shortens the objection period to give the District Judge sufficient time to resolve any objections. While this period is shorter than the customary fourteen days, the Magistrate Judge held a status conference on March 14, 2024, and advised counsel that the objection period would be shortened due to the trial date. *See, e.g., Sabal Trail Transmission, LLC. v. 7.72 Acres in Lee Cnty., Alabama*, No. 3:16-CV-173-WKW, 2016 WL 10789585, at *2 (M.D. Ala. June 6, 2016); *U.S v. Shiver*, No. 1:05-CR-256-LSC WO, 2006 WL 3248544, at *3 (M.D. Ala. Nov. 8, 2006), *report and recommendation adopted,* No. 1:05-CR-256-LSC, 2006 WL 8446139 (M.D. Ala. Nov. 21, 2006), *aff'd in part, vacated in part, remanded,* 305 F. App'x 640 (11th Cir. 2008) (shortening period for objections to recommendation on motion to suppress).

the District Court except on grounds of plain error or manifest injustice. *See* 11th Cir. R.

3-1.

DONE this 18th day of March, 2024.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE